S08F1541. RUMLEY-MIAWAMA v. MIAWAMA.

(671 SE2d 827)

CARLEY, Justice.

Cherree Rumley-Miawama (Wife) instituted a divorce action against Dider Francis Miawama (Husband). After conducting a bench trial, the trial court entered a final divorce decree awarding joint legal custody of the parties' minor child, and granting primary physical custody to Husband and secondary physical custody to Wife. If Wife continues to reside in Georgia, she is required to pay $1597.22

per month in child support and is entitled to visitation on alternating weeks so that both parents spend equal amounts of time with the child. If Wife moves out of Georgia, she will be entitled to visitation on three-day federal holiday weekends, Thanksgiving, and December 26 through January 4, and for two months during the summer. Wife filed a motion for new trial. The trial court denied the motion and Wife applied for discretionary review, which was granted pursuant to this Court's Pilot Project for domestic relations cases.

1. Wife contends that the trial court erred in failing to recognize and exercise its discretion to apply a deviation from the child support guidelines based upon equal parenting time.

The revised child support guidelines in OCGA § 19-6-15 are applicable, as this case was tried and judgment was entered after January 1, 2007, the effective date of the revision. Compare *Messaadi v. Messaadi*, 282 Ga. 126, 128 (2) (646 SE2d 230) (2007). The 2008 amendments to OCGA § 19-6-15 do not apply, as they did not become effective until July 1, 2008. See *Messaadi v. Messaadi*, supra.

The revised child support guidelines permit the finder of fact to deviate

> from the presumptive amount of child support when special circumstances make the presumptive amount of child support excessive or inadequate due to extended parenting time as set forth in the order of visitation or when the child resides with both parents equally.

OCGA § 19-6-15 (i) (2) (K) (i). See also OCGA § 19-6-15 (b) (8) (J). Under OCGA § 19-6-15 (c) (2) (E) and (i) (1) (B), a child support order

> must contain a written finding of fact as to whether any deviations are applicable. If any deviation applies *and* the court or jury decides to deviate from the presumptive amount of child support, then the order must explain how the court or jury reached that decision. On the other hand, we conclude from the plain language of OCGA § 19-6-15 that the converse is not the case. That is, if *no* deviation applies and the court or jury decides *not* to deviate from the presumptive amount of child support, then the order need *not* explain how the court or jury reached that decision. Because the trial court in this case decided to award the presumptive amount of child support without applying a discretionary deviation, OCGA § 19-6-15 does not require the court to issue findings to explain its reasoning in reaching that decision. Accordingly, we decline to remand this case. (Emphasis in original.)

*Hamlin v. Ramey*, 291 Ga. App. 222, 227 (2) (661 SE2d 593) (2008). Wife relies on the trial court's comment that "the General Assembly has passed new guidelines which basically remove from the judge a good amount of discretion." However, that comment does not indicate that the trial court misunderstood the extent of its discretion. Indeed, when making its alternative visitation award, the trial court specifically exercised its discretion by means of a deviation for travel expenses. See OCGA § 19-6-15 (i) (2) (F).

2. Wife further contends that the trial court erred in imposing visitation provisions which excessively penalize her in the event that she moves out of state.

The visitation schedule which automatically takes effect whenever Wife may move out of Georgia constitutes a self-executing change of visitation provision. *Dellinger v. Dellinger*, 278 Ga. 732 (609 SE2d 331) (2004).

> [S]elf-executing material changes in visitation violate this State's public policy founded on the best interests of a child unless there is evidence before the court that one or both parties have committed to a given course of action that will be implemented at a given time; the court has heard evidence how that course of action will impact upon the best interests of the child or children involved; and the provision is carefully crafted to address the effects on the offspring of that given course of action. Such provisions should be the exception, not the rule, and should be narrowly drafted to ensure that they will not impact adversely upon any child's best interests.

*Dellinger v. Dellinger*, supra at 733-734 (1). The change in visitation clearly is material because the triggering event of Wife's move out of state "means that instead of spending half of their lives" together, Wife and her child will see each other "at best [three] days a month during most of the year." *Dellinger v. Dellinger*, supra at 734 (1).

The transcript reveals that Wife was considering a move to Texas. She testified that she had participated in an extensive application and interview process for a new professional position, and she outlined the considerations involved in making her decision, including what type of house she would acquire and what her salary would be. However, nothing in the transcript reflects that Wife had committed to that course of action or that she would implement it at any given time. *Dellinger v. Dellinger*, supra at 734-735 (1). Indeed, she specifically referred to the course of action as a "potential move." Moreover,

the automatic change in visitation provision in this case contains no language limiting its application at or near the time of the divorce. In fact, the challenged provision lacks any expiration date at all. As drafted the provision would authorize implementation of the self-executing change of visitation at any time, even though the change could be triggered months or even years in the future. This material change in the . . . visitation would be accomplished automatically and "without any regard to the circumstances existing" in the [child's life] at the time of the change. [Cit.] As such, this provision is "utterly devoid of the flexibility necessary to adapt to the unique variables that arise in every case, variables that must be assessed in order to determine what serves the best interests and welfare of a child." [Cit.] Further undermining the validity of the challenged provision is the arbitrary triggering event chosen by the trial court. Self-executing material changes in visitation must be carefully crafted to connect the occurrence of the triggering event to the best interests of the child or children so as to warrant a material change in visitation. Here, the triggering event — [Wife's] move to a residence [out of state] — has only a tangential connection with the [child's] best interests.

*Dellinger v. Dellinger*, supra at 735 (1). If the child's commute time was a concern, certain moves within Georgia could lengthen that time as much as or more than certain moves out of state. See *Dellinger v. Dellinger*, supra. "As drafted, the challenged provision fails to reflect an individualized consideration of the [child's] best interests in this case and neither recognizes nor promotes those best interests as they may be affected by the triggering event." *Dellinger v. Dellinger*, supra.

The provision thus improperly authorized an open-ended, automatic, material change in visitation without providing for a determination whether the visitation change is in the best interests of the parties' [child] and without connecting the triggering event to those best interests. It follows that the trial court erred by including that self-executing change in visitation provision in the parties' divorce decree. Therefore, we reverse [the judgment] with the direction that the trial court strike the self-executing provision of the decree.

*Dellinger v. Dellinger*, supra at 736 (1).

3. Wife urges that the trial court erred in awarding certain personal property to Husband. Although she argues that there is not

any evidence to support the award and that it includes more bedroom furniture for the child than Husband needs, she acknowledges that the property was purchased with marital assets. "[A]n *equitable* division of marital property does not necessarily mean an *equal* division, and the actual division of marital property will be upheld so long as it falls within the broad discretion of the factfinder. [Cit.]" (Emphasis in original.) *Mathis v. Mathis*, 281 Ga. 865, 866 (642 SE2d 832) (2007). Because this issue depends on the factual determinations made by the trial court as the finder of fact and the trial court neither made written factual findings nor was requested to do so, " 'we are unable to conclude that the trial court's equitable distribution of marital property was improper as a matter of law or as a matter of fact.' [Cit.]" *Hammond v. Hammond*, 282 Ga. 456, 458 (4) (651 SE2d 95) (2007). The record does not show

> "that the trial court treated (Wife) inequitably in its decision regarding what constituted a fair division between the parties of the marital property. Therefore, we hold that (she) failed to carry (her) burden of proving error in the trial court's award to (Husband)." [Cit.]

*Wright v. Wright*, 277 Ga. 133, 134-135 (3) (587 SE2d 600) (2003).

*Judgment affirmed in part and reversed in part with direction. All the Justices concur, except Sears, C. J., who concurs in Divisions 1 and 3, and in the judgment.*

DECIDED JANUARY 12, 2009.

*Christopher J. McFadden*, for appellant.

*Emily S. Blair & Associates, Emily S. Blair, George T. Davis*, for appellee.